IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>SEDARIOUS LAWRENCE,<br><br>    Defendant. | CRIMINAL ACTION NO.<br><br>1:17-cr-126-LMM-CMS |

**AMENDED NON-FINAL REPORT AND RECOMMENDATION**

The Government has charged Defendant Sedarious Lawrence with one count of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). [Doc. 1]. Before the Court are two motions filed by Defendant: (1) a motion to suppress cell phone evidence obtained through a warrant [Doc. 25]; and (2) a motion to dismiss the indictment based on "substantial misconduct by government agents" [Doc. 18]. For the reasons that follow, I recommend that both motions be denied.[1]

---

[1] Defendant has also filed a motion to suppress certain statements that he made [Doc. 16] and a motion to suppress evidence found at the time of his arrest [Doc. 17]. Those motions are not yet fully briefed and will be the subject of a separate Report and Recommendation.

## I. MOTION TO SUPPRESS CELL PHONE EVIDENCE [Doc. 25]

Defendant moves to suppress certain cell phone evidence that was seized pursuant to a warrant. [Doc. 25]. In an email to defense counsel with a copy to the Court, the Government stated that it has decided that it does not intend to use the cell phone evidence in its case-in-chief at trial, although it reserves the right to use the evidence on cross-examination and/or on rebuttal. Given this representation, I recommend that Defendant's motion to suppress the cell phone evidence [Doc. 25] be denied as moot.

## II. MOTION TO DISMISS [Doc. 18]

### A. Background

According to Defendant's motion to dismiss the indictment, on February 16, 2017, Defendant was arrested for being a felon in possession of a firearm and was charged in Fulton County Superior Court. [Doc. 18 at 1-2]. In connection with that proceeding, a woman named Brigette Alexander submitted an affidavit to the court claiming ownership of the gun that Defendant was accused of possessing. [Doc. 18-1 at 2]. Ms. Alexander swore in her affidavit that she accidentally left the gun in Defendant's car. [Id.].

According to the motion to dismiss, the state charges were dropped on March 30, 2017, after which Defendant was indicted federally in this case on April

11, 2017 for the same conduct. [Doc. 18 at 2]. At his initial appearance in this Court on April 21, 2017, Vionette Johnson of the Federal Defender Program was appointed to represent Defendant. [Doc. 5]. According to the motion to dismiss, on April 26, 2017, Ms. Johnson's investigator, Diana DePina, called Brigette Alexander to conduct an interview. [Doc. 18 at 3]. The motion describes that interview as follows:

> Ms. Alexander advised [Ms. DePina] that two law enforcement officers had gone to see her earlier in the day. She identified the law enforcement officers as Agent Allen Mcleod and Lt. Fisher. She further advised that the law enforcement officers told her not to speak with Mr. Lawrence's people. Investigator DePina advised Ms. Alexander that we had been appointed to represent Mr. Lawrence on the gun charge and that is when she said she was told not to talk to us, his people, about that. Following the government's agents instructions, Ms. Alexander refused to talk to the defense investigator.

[Id.]. In his motion, Defendant seeks dismissal of the indictment, arguing that the Government substantially interfered with Ms. Alexander's choice to testify and that as a result, his ability to mount a defense to the charges against him has been impaired. [Doc. 18 at 3-7]. The Government filed a response strenuously disputing the facts as recounted in the motion to dismiss and arguing, alternatively, that even if the facts in the motion were true, the proper remedy is simply to provide Defendant with access to the witness—not to dismiss the indictment. [Doc. 23].

On July 11, 2017, I held a hearing on the motion to dismiss. Defense counsel stated that she wished to present the testimony of both Ms. DePina (the investigator) and Ms. Alexander (the witness), but that she had been unable to locate Ms. Alexander to serve her with a subpoena. [Doc. 53 at 2-3].

Defendant called Ms. DePina as a witness, and she testified consistently with what was presented in the motion to dismiss, i.e., that she was a staff investigator with the Federal Defender Program, that on April 26, 2017, she called Brigette Alexander, and that Ms. Alexander told her that "ATF had come by to see [Ms. Alexander] that day, and they told [Ms. Alexander] not to talk to Lawrence's people." [Doc. 53 at 5-7]. According to Ms. DePina, Ms. Alexander identified the officers as Agent Mcleod and Lieutenant Fisher. [Id. at 7]. Ms. DePina testified that, consistent with her practice of ending conversations when a witness indicates that he or she does not wish to be interviewed, she ended the call with Ms. Alexander. [Id.].

The Government called Alan Mcleod, a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), as its first witness. [Doc. 53 at 12-13]. Special Agent Mcleod testified that on April 26, 2017, he and his partner, Task Force Officer ("TFO") Ken Fisher met with Ms. Alexander in person. [Id. at 13-14]. They spoke with her for approximately ten to fifteen

4

minutes, after which Special Agent Mcleod recorded a "synopsis" or "summary" of the conversation to make sure that he had his facts correct. [Id. at 14-15]. He testified that he told Ms. Alexander that he was going to record a summary of their conversation and that she understood that was what he was doing. [Id. at 15]. During the hearing, the Government played the recording, which was approximately four minutes long; the recording did not contain any admonition against speaking with people associated with Defendant. [Id. at 16-17]. On the contrary, the recording includes one of the agents saying "you can talk to anyone you want to talk to." [Id. at 30-31]. Special Agent Mcleod testified unequivocally that during the unrecorded part of the conversation, he did not make any statements to Ms. Alexander about whether she could or could not talk to persons associated with Defendant. [Id. at 15, 17]. Special Agent Mcleod testified that he told her "she could talk to anybody she wants to but just to tell the truth." [Id. at 15].

The third and final witness at the hearing was TFO Kenneth Fisher. [Doc. 53 at 23]. TFO Fisher provided testimony consistent with that of Special Agent Mcleod, i.e., that Fisher and Mcleod met with Ms. Alexander on April 26, 2017, and that they did not tell Ms. Alexander not to talk to anybody. [Doc. 53 at 24]. TFO Fisher also provided the following testimony:

> At some point during the conversation, it was discussed that she had previously spoke with a defense attorney on the state level, and we

5

> told her that we were aware of that, and we asked her had she spoke with investigators from the defense on the federal level, and she said she had not. We told her that they would probably be contacting her, and she said she didn't want to talk to them, and we told her that she did not have to if she chose not to, but if she chose to, that she should tell the truth.

[Id. at 25].

At Defendant's request, I held the hearing open to give defense counsel the opportunity to locate Ms. Alexander, serve her with a subpoena, and provide her testimony in support of the motion to dismiss.

On August 7, 2017, the hearing on the motion to dismiss was re-convened, and Ms. Alexander appeared and was called as a witness. [Doc. 54 at 47-61]. Ms. Alexander testified that she recalled meeting with the two agents but did not recall that the agents recorded any part of her conversation with them. [Id. at 49]. A portion of the recording was played during her hearing to refresh her recollection. [Id. at 50, 54-56]. Ms. Alexander testified that someone representing Defendant contacted her and that:

> ATF told me not to talk to anyone else outside of them. So I didn't know if [Ms. DePina] had anything to do with them, but when she contacted me and said that she was dealing with, you know, Mr. Lawrence, I just–I didn't have anything else to say.

[Doc. 54 at 51].

Following Ms. Alexander's testimony and while she was still on the stand, I advised Ms. Alexander that she had the right to speak to anyone that she might choose to speak to, including "Defendant's people" and any other people associated with Defendant; I advised her that it was her choice. [Doc. 54 at 60]. I further advised her that to the extent anyone ever told her something different, that was incorrect. [Id.]. Ms. Alexander indicated that she understood what I had said. [Id.].

At the conclusion of the hearing, I indicated to the lawyers that based on the curative instruction that I had provided to Ms. Alexander, the risk of prejudice to Defendant had been removed and that I thought the motion to dismiss was moot. Defendant did not request the opportunity to file additional briefing on the issue. The Government, however, asked that I keep the hearing open because it was considering asking Ms. Alexander additional questions—questions that might have implicated Ms. Alexander's Fifth Amendment right against self-incrimination and required the Court to appoint counsel to represent her—in order to remove any taint on the agents' reputations that might be left as a result of Ms. Alexander's testimony. On August 8, 2017, I held a teleconference with counsel for Defendant and for the Government regarding the Government's request that I keep the hearing open. After hearing from both parties, I concluded, for the reasons that

7

follow, that the motion to dismiss was due to be denied and that any further questioning of Ms. Alexander would not impact that ruling. Accordingly, I denied the Government's request to keep the hearing open.

### B.   Discussion

The Eleventh Circuit has provided guidance regarding claims for violation of the right to access to witnesses:

> It is well established that a defendant is normally entitled, without governmental interference, to access to prospective witnesses. Moreover, the suppression of witnesses by the government violates the due process clause. In most cases in which the court has found a constitutional violation, prosecutors have hidden witnesses or deliberately disobeyed court orders to produce for examination witnesses under governmental control. This circuit has made it clear that appellants seeking reversal on the basis of prosecutorially-impaired access to witnesses must allege specific demonstrable prejudice in order to set forth a constitutional claim.

U.S. v. Pepe, 747 F.2d 632, 654-55 (11th Cir. 1984) (citations omitted). The Eleventh Circuit has also held that when someone from the prosecution team interferes with the defense's access to a witness, that violation may be cured by a subsequent instruction to the witness that he is free to speak with the defense. See United States v. Terzado-Madruga, 897 F.2d 1099, 1108 (11th Cir. 1990) ("To the extent the agent's suggestion to [the witness] that it would be in her 'best interest' not to talk to the defense's investigator was improper, this comment was later cured or at least mitigated by the government's advice that she was free to do so.")

The instant case does not involve the deliberate violation of a court order or the hiding of a witness. Indeed, the audio recording reflects that the agents advised Ms. Alexander, on at least one occasion, that she could speak with anyone she chose to speak with. Moreover, on August 7, 2017, I advised Ms. Alexander that she was free to speak with the defense, thus allowing ample opportunity for the defense to interview her without any perceived or actual obstruction from the Government.

It is evident that any possible prejudice to Defendant has been ameliorated by my instructions to Ms. Alexander. See Terzado-Madruga, 897 F.2d at 1108 (finding no constitutional violation where the agent allegedly told the witness it would be in the witness's best interest not to speak with the defense team but where the witness was later advised that the witness was free to do so); United States v. Rodgers, 624 F.2d 1303, 1311 (5th Cir. 1980) (holding that the district court's requirement that the government inform the witnesses that they were free to speak with the defense "ameliorated any possible prejudice to the defendants"). Given my curative instruction, and in the absence of a showing of actual prejudice, I conclude that the motion to dismiss should be **DENIED**.

### III.  CONCLUSION

For the foregoing reasons, I **RECOMMEND** that Defendant's motion to suppress cell phone evidence [Doc. 25] be **DENIED AS MOOT** and that Defendant's motion to dismiss [Doc. 18] be **DENIED**.

**IT IS SO REPORTED AND RECOMMENDED** this 1st  day of March, 2018.

_____
Catherine M. Salinas
United States Magistrate Judge