IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL ACTION |
| v. | |
| | NO. 1:17-cr-126-LMM-CMS |
| SEDARIOUS LAWRENCE, | |
| Defendant. | |

## FINAL REPORT AND RECOMMENDATION

On April 11, 2017, a grand jury sitting in the Northern District of Georgia returned a one-count indictment against Defendant Sedarious Lawrence for being a felon in possession of a firearm, in violation of Title 18, United States Code, Sections 922(g)(1) and 924(e). [Doc. 1].   Presently before the Court are two motions to suppress: a Motion to Suppress Evidence [Doc. 17] and a Motion to Suppress Statements [Doc. 16].

## I.    THE PENDING MOTIONS

### A. Motion to Suppress Evidence

In the Motion to Suppress Evidence, Defendant asserts that on February 16, 2017, he was driving a rented black Range Rover when he was stopped for a traffic and equipment violation.  [Doc. 17 at 1].  He asserts that he was removed from the car, detained, and placed in handcuffs.   [Id.].   The officers then searched the

Range Rover and found on the floor of the back seat the firearm that serves as the basis for the one-count indictment in this case. [Id. at 1-2]. Through his Motion to Suppress Evidence, Defendant seeks to suppress all fruits obtained from that search and seizure, including the firearm, any other physical evidence taken as a result of that search and seizure, and any statements he may have made after he was stopped. [Id. at 2].

### B. Motion to Suppress Statements

Defendant's Motion to Suppress Statements is brought pursuant to Jackson v. Denno, 378 U.S. 368, 376-77 (1964). [Doc. 16 at 1]. Defendant argues that the Government must show that any custodial statements were made voluntarily and not in violation of Miranda. On July 17, 2017, the Government clarified that although Defendant apparently made a number of statements, the only statements it intends to use at trial are those made during the traffic stop on the side of the road. [Doc. 42 at 2-3].

## II. FACTS PRESENTED AT THE EVIDENTIARY HEARING

I held an evidentiary hearing on the two motions to suppress over the course of two days, July 17, 2017 [Doc. 42] and August 7, 2017 [Doc. 54].

The Government's first witness was Caleb Munson, an officer with the City of Atlanta Police Department ("APD"). [Doc. 42 at 6-36]. Officer Munson

2

testified that on the evening of February 16, 2017, he was working in a marked patrol car with another APD officer, Jacob Fletcher, in the Fulton Industrial area of Atlanta. [Id. at 7-10]. Officer Munson testified that he had received a "BOLO"— be on the lookout—message for a black Range Rover, which he located around 9 p.m. at the Airway Motel, an establishment known for drug-related activity and prostitution. [Id. at 8]. Upon noticing the Range Rover parked at the Airway Motel, Officer Munson crossed the street and parked. [Id. at 9]. He then observed the Range Rover leave the motel parking lot and pull onto Fulton Industrial Boulevard at a high rate of speed and without any lights on. [Id. at 10-11]. Officer Munson followed the Range Rover, and when he caught up to it, the Range Rover's lights came on, at which point Officer Munson activated his lights and sirens. [Id. at 11]. The Range Rover did not immediately pull over, and Officer Munson then shined the spotlight that was mounted on his patrol car into the back of the Range Rover. [Id. at 12, 31-32]. While the spotlight was activated, Officer Munson saw "a large object" being thrown to the back of the vehicle. [Id. at 11-12]. At that point, the Range Rover stopped. [Id. at 12].

Officer Munson testified that he exited his patrol vehicle and then approached the driver's side of the Range Rover while Officer Fletcher went to the passenger side. [Doc. 42 at 12]. Defendant was the driver, and he rolled down his

3

window and provided Officer Munson with his driver's license.  [Id. at 12-13].

Officer Munson testified that he smelled marijuana coming from the Range Rover.

[Id. at 12].  Offer Munson asked Defendant to get out of the car, which Defendant

did, and then Officer Munson detained Defendant and placed him in handcuffs

"because of the odor of marijuana in the vehicle to conduct a search on the

vehicle."  [Id. at 12-13].  Once Defendant was in handcuffs, Officer Munson

passed him off to Officer Fletcher and then conducted a search of the Range Rover.

[Id. at 13].  Officer Munson testified that he saw, in plain view, a short-barreled

rifle in the back floorboard, located "halfway sticking out from a half-torn shoe

box and black bag."  [Id. at 15].  The gun was loaded, with a round in the chamber.

[Id.].  During the traffic stop, another officer ran a check on Defendant and

determined that Defendant was a felon; the officers then arrested Defendant for

being a felon in possession of a firearm.  [Id. at 19].  Officer Munson was shown a

photograph of the gun, which he positively identified.  [Doc. 41-1 at 1 (Gov't Ex.

1)].

The Government's next witness was APD Officer Jacob Fletcher.  [Doc. 42

at 38-70].  Officer Fletcher testified that on the evening in question, he was riding

with Officer Munson when he became aware of the black Range Rover parked at

the Airway Motel.  [Id. at 39-40, 53].  He testified that when the Range Rover

pulled out of the parking lot, it did so at a "high rate of speed" and did not have its headlights on, even though it was dark outside.  [Id. at 40-41, 53].  It took the officers "a minute" to catch up with the Range Rover, but once they did, they turned on the blue lights and could see "furtive movements" from the driver.  [Id. at 41].  The officers then called for backup, which Officer Fletcher said was not unusual, given that his unit (the Apex unit) works in a team setting and that the Fulton Industrial area is a "very violent and high crime area."  [Id. at 41-42].  After the officers turned on the blue lights, the Range Rover did not immediately stop: "It took him not a long time to pull over, but he didn't pull directly over once the blue lights were initiated, but he didn't take off either.  It was just like a slow pace like he's pulling over, but it did take him a minute to come to a complete stop."  [Id. at 42].

Eventually, the Range Rover pulled over and came to a stop.  [Doc. 42 at 42-43].  Officer Fletcher first encountered Defendant as Officer Munson was bringing him to the rear of the Range Rover.  [Id. at 43, 59].  At that point, Officer Fletcher took Defendant to the rear passenger side of the patrol car and started talking to Defendant.  [Id.].  Officer Fletcher testified that he smelled marijuana while he was talking to Defendant.  [Id.].  Officer Fletcher testified that at that time, he read Defendant his Miranda warnings from a card that he carries with him, and a copy

5

of that card was admitted into evidence.  [Id. at 44; Doc. 41-1 at 11-12 (Gov't Ex. 5)].   After Defendant was read his rights, Officer Munson pulled a large weapon out of the back of the Range Rover.  When Defendant saw it, he stated "oh that's my sister's gun." [Doc. 42 at 46].   According to Officer Fletcher, Defendant got "a little anxious or whatever and kept kind of overtalking about it."  [Id.].   Then Defendant stated "that's my sister's gun, I was calling her right now, I was about to take her the gun back." [Id.].  According to Officer Fletcher, Defendant stated that "he did observe the gun in the back seat, and he moved it because he didn't want to be anywhere near it.  So he was calling his sister to take the gun back to her because he said he wasn't supposed to be around a weapon."  [Id. at 47].  Officer Fletcher testified that Defendant stated that he had just dropped his sister off in the area around Martin Luther King, Jr. Drive and that he had been trying to get her on the phone to arrange for him to return the gun to her.[1]  [Id. at 48, 64-65].

   At the close of the Government's evidence, the Government moved into evidence, over Defendant's objection, the disposition of a traffic charge from

---

[1]  The transcript contains conflicting evidence as to whether Defendant admitted that he was a felon.  After reviewing his report, Officer Fletcher testified three times that Defendant stated "No, I'm a felon."  [Doc. 42 at page 48, line 8; page 48, line 14; and page 63, lines 16-17].  Later, however, Officer Fletcher testified that Defendant stated, "No, I'm not a felon."  [Id. at page 68, line 17].

6

Fulton County Superior Court showing that Defendant pleaded no contest to the charge of driving without headlights. [Doc. 41-1 at 4-10 (Gov't Ex. 4)].

The defense then called Diana DePina, an investigator with the Federal Defender Program, who provided testimony regarding a demonstrative aid that was used during the hearing and regarding her investigation of the case.  [Doc. 42 at 71-74; Doc. 41-2 at 1-3 (Def. Exs. 1-3)].  Ms. DePina testified that she personally drove the distance from the motel to the place where Defendant was stopped, and that the distance was approximately three miles.  [Id. at 72].  At that point in the hearing, defense counsel indicated that she needed additional time to speak with her client about whether he would be testifying at the hearing, and she also advised the court that Defendant was not satisfied with her representation.  [Id. at 74].

After taking a break to speak with Defendant and his lawyer outside the presence of the Government [Doc. 96], I indicated that I was going to keep the hearing open until August 7, 2017 to give the defense the opportunity to serve a subpoena and do additional investigation.  [Doc. 42 at 78].

On August 7, 2017, I heard additional evidence on Defendant's two motions to suppress.  [Doc. 54].  The defense called Garland Helton, a salesman with Jaguar Land Rover North Point in Alpharetta, Georgia.  [Id. at 3].  Mr. Helton testified that the 2016 Range Rover Evoque—the type of vehicle Defendant was

7

driving at the time of his arrest—comes equipped with automatic headlights, which means that the driver can manually change the headlight switch to automatic "in which case the headlights come on in dim light conditions and go out in bright light conditions without [the operator] having to do anything with the switch." [Id. at 5]. He testified that although normally people leave the switch in the automatic position, the driver has the option of turning that feature off. [Id. at 5, 8]. When the automatic headlight feature is turned off, the driver must manually turn on the headlights. [Id. at 8]. Mr. Helton also testified that the 2016 Range Rover Evoque comes with tinted glass in the rear windows and cargo bay, known as "privacy glass." [Id. at 6].

Defendant then testified, against the advice of his attorney. [Doc. 54 at 12-23]. He testified that when he pulled out of the Airway Motel on the evening of February 16, 2017, his lights were on the entire time and were set in the automatic position. [Id. at 15]. On cross-examination, the prosecutor read from the transcript of the detention hearing at which Defendant testified that "my lights were not out for maybe four seconds at the most. When I realized they was out, when I left the hotel, I realized they was out, you know what I mean, and I cut the lights on, and they pulled me over." [Id. at 18]. Defendant then testified that what he was

referring to in that portion of his detention hearing testimony was the use of his bright lights; he reiterated that his headlights were never off.  [Id. at 21-23].

The Government then called Andrew Griffin, an APD detective.  [Doc. 54 at 31- 39].  Detective Griffin testified that on the evening of February 16, 2017, he was working a side job at Phillips Arena.  [Id. at 32].  While working that job, he received a tip from a confidential source on his government phone that he should be on the lookout for Defendant who was reported to be in possession of several firearms and driving a black Range Rover.  According to the source, Defendant was thought to be in the area of Campbellton Road or Fulton Industrial Road near the Airway Motel.  [Id. at 32, 37].  Upon receiving this tip, Detective Griffin called Officer Munson, who he knew was working in that area, and relayed the tip to him for what he described as "officer safety reasons."  [Id. at 32-33].

At the Government's request, I left the hearing open so that the Government could present evidence to attack Defendant's credibility, including by providing certified copies of Defendant's previous convictions. [Doc. 54 at 29].   The Government later filed documentation showing that Defendant has a prior conviction for financial identity fraud and forgery [Doc. 51-1 (Gov't Ex. R2)], and he has other convictions where he used the alias "Jerome Mitchell" [Docs. 51-2, 51-3, 51-4 (Gov't Exs. R3, R4, R5)].

9

## III.   DEFENDANT'S POST-HEARING BRIEF AND ARGUMENTS

On September 5, 2017, I received a letter from Defendant asking for replacement counsel.  [Doc. 55].  On September 7, 2017, I granted the motion, and thereafter appointed Jay Strongwater to represent Defendant.  [Docs. 57, 58, 63, 64].  I then gave Defendant two extensions of time to file a post-hearing brief.  [Docs. 60, 62, 65, 66].  On December 11, 2017, Mr. Strongwater filed a post-hearing brief.  [Doc. 69].

The heart of Defendant's argument is that there was no probable cause or reasonable suspicion to support the stop of Defendant's vehicle. [Doc. 69 at 6-7].  Defendant does not appear to dispute the fact that it was dark when he pulled out of the Airway Motel or that driving without headlights in the dark is against Georgia law.  [See generally Doc. 69].  Rather, Defendant argues that despite the fact that both officers testified that Defendant's lights were off when he left the motel, the evidence shows that his lights were actually on.  Defendant contends the officers should not be believed because (1) Defendant testified that his lights were on when he left the motel; (2) Range Rover Evoques come with automatic light features; and (3) if his lights were really off, the officers would not have waited for

three miles to stop him, but rather would have acted with more urgency.[2]   [Doc. 69 at 2-3, 6-7].

The Government filed a response, arguing that there was ample evidence in the record to show that the stop was proper because the officers had probable cause to believe that a traffic violation—driving without lights—was occurring.  [Doc. 72].

In his reply, Defendant does not attempt to refute the Government's arguments; rather, he simply raises an entirely new argument, i.e., that the officers who stopped him did not have the authority to do so because the stop occurred in unincorporated Fulton County, which he contends is outside the jurisdiction of the APD officers.  [Doc. 74 at 1-3].  The Government then moved for leave to file a

---

[2] In his post-hearing brief, Defendant also argues alternatively that the BOLO information provided to Officer Munson is not sufficient to establish probable cause for the stop.  [Doc. 69 at 7-8].  I need not address this argument, however, because, as discussed below, I have concluded that (1) the police had probable cause to believe that a traffic violation had occurred in their presence; and (2) the stop was reasonable and did not violate the Fourth Amendment. The subjective reasons that the officers may have had to stop Defendant's car are not material because there was probable cause to believe that Defendant was committing a traffic violation.  See Whren v. United States, 517 U.S. 806, 813 (1996) ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis.").

sur-reply to respond to this new argument, which I granted.  [Doc. 82].  The two motions to suppress are now fully briefed and ready for the Court's consideration.

## IV.   DISCUSSION

### A. Motion to Suppress Statements

In his post-hearing brief, Defendant focuses entirely on the Motion to Suppress Evidence and makes no additional argument regarding any purported violation of his <u>Miranda</u> rights or the voluntariness of any statements.  This is likely because the Government indicated that the only statements it intends to use at trial are those made during the traffic stop on the side of the road.  Of course, if the stop were found to be illegal, the fruits of that stop—including statements made on the side of the road—would be subject to suppression.  [Doc. 42 at 2-3].

In the absence of additional arguments concerning any purported violation of his <u>Miranda</u> rights or the voluntariness of any statements, I conclude that the Motion to Suppress Statements should be denied.  I will limit my analysis to the legality of the stop, which I address in the context of Defendant's Motion to Suppress Evidence.

### B. Motion to Suppress Evidence

The Supreme Court has articulated the following standard for how the Fourth Amendment applies to a stop based on a traffic violation:

> The Fourth Amendment guarantees the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.   Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a "seizure" of "persons" within the meaning of this provision.   An automobile stop is thus subject to the constitutional imperative that it not be "unreasonable" under the circumstances. As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred.

Whren v. United States, 517 U.S. 806, 809-10 (1996) (internal citations and quotations omitted).   The Eleventh Circuit has held that a traffic stop "is constitutional if it is either based upon probable cause to believe a traffic violation has occurred or justified by reasonable suspicion." United States v. Spoerke, 568 F.3d 1236, 1248 (11th Cir. 2009) (quotations omitted).   "Probable cause exists where the facts and circumstances within the collective knowledge of the law enforcement officials, of which they had reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe an offense has been or is being committed." United States v. Jimenez, 780 F.2d 975, 978 (11th Cir. 1986) (quotation omitted).   There is probable cause to conduct a traffic stop where an officer observes a defendant commit a traffic violation such as speeding or making an illegal lane change. United States v. Harris, 526 F.3d 1334, 1338 (11th Cir. 2008) (holding that the officer had probable cause to stop the defendant who failed to signal a lane change); United States v. Pruitt, 174 F.3d 1215, 1217 n. 1 (11th

13

Cir. 1999) (noting that probable cause existed to conduct a traffic stop because the defendant was speeding).

Here, the Government has carried its burden of showing that the officers had probable cause to stop Defendant's vehicle. Officers Munson and Fletcher both testified credibly that at approximately 9 p.m. on February 16, 2017, at night, they observed Defendant's vehicle exit the Airway Motel parking lot with no lights on. [Doc. 42 at 10, 40]. Driving in the dark without headlights is a violation of Georgia law. See O.C.G.A. § 40-8-20 ("Every vehicle upon a highway within this state at any time from a half-hour after sunset to a half-hour before sunrise and . . . at any other time when there is not sufficient visibility to render clearly discernible persons and vehicles on the highway at a distance of 500 feet ahead shall display lights, including headlights, and illuminating devices as required in this part for different classes of vehicles, subject to exceptions with respect to parked vehicles as stated in this part.").

I find each of Defendant's arguments unpersuasive. First, Defendant's testimony during the evidentiary hearing that his lights were on when he exited the Airway Motel is not credible. At the suppression hearing before me, Defendant testified that his lights were never off: "as far as the lights being off, they were never off, period." [Doc. 54 at 23]. But he gave contrary testimony at his

14

detention hearing before United States Magistrate Judge John K. Larkins, when Defendant testified under oath that his lights were out for a short time: "my lights were not out for maybe four seconds." [Doc. 47 at 23].   His testimony at the suppression hearing appears to be an attempt to backtrack from that earlier testimony and is not believable.  Additionally, Defendant is not a credible witness, having previously gone by aliases [Docs. 51-2, 51-3, 51-4 (Gov't Exs. R3, R4, R5)] and having been convicted of a crime of moral turpitude [Doc. 51-1 (Gov't Ex. R2)].

Second, the evidence that Range Rovers come equipped with the option having headlights come on automatically is not persuasive because that function may be turned on or off, at the driver's option.  Although Defendant testified that he was using the automatic light feature at the time he left the motel, his testimony lacks credibility for the same reasons noted above. Defendant admitted during his detention hearing that, for at least some period of time, he was driving without his lights, which compels the conclusion that he was not using the automatic light feature when he left the motel parking lot.

Third, the fact that the officers allowed Defendant to drive for approximately three miles before Defendant ultimately stopped the Range Rover does not render the testimony of the officers unbelievable.  The evidence shows that Defendant

drove out of the Airway Motel at a high rate of speed, which would cause some distance to be covered while the officers caught up to him.  The evidence also shows that after the officers put on their lights and sirens, Defendant took his time complying with the officers' directives to pull over.  Moreover, Officer Munson testified that Defendant turned on his lights at some point while the officers were following him.   I found both officers to be credible and their version of events to be plausible.  Moreover, Defendant has highlighted no inconsistencies between the two officers' testimony.

Finally, Defendant argues that all of the evidence against him should be suppressed because the officers were outside of their jurisdiction when they stopped him.  This argument fails because the issue presented here—whether to suppress evidence based on violation of the Fourth Amendment to the U.S. Constitution—does not turn on the legality of the arrest under state law.  Rather, if there is probable cause to believe that a person committed an offense, the arrest of that person does not violate the Fourth Amendment.  See Virginia v. Moore, 553 U.S. 164, 176 (2008) ("warrantless arrests for crimes committed in the presence of an arresting officer are reasonable under the Constitution").  Stated another way, while an arrest may be prohibited by state law for some reason, that same arrest does not violate the Fourth Amendment if the crime is committed in the presence

16

of an arresting officer.   See U.S. v. Goings, 573 F.3d 1141 (11th Cir. 2009) (holding that even if Georgia law enforcement officers lacked authority to arrest defendant in Florida after pursuing him across state lines in a high-speed chase, no suppression was warranted because the arrest satisfied the requirements of the Fourth Amendment).   Such arrests are "reasonable under the Constitution."   Id. at 1143.   "[W]hile States are free to regulate such arrests however they desire, state restrictions do not alter the Fourth Amendment's protections."   Id. (quoting Moore, 553 U.S. at 176).   Thus, even if Defendant's arrest were somehow improper, Defendant's Fourth Amendment challenge fails because the officers testified credibly that they witnessed Defendant driving without his lights, and therefore had probable cause to believe that Defendant had committed an offense.

## V.      CONCLUSION

Based on the evidence presented at the hearing and the arguments of counsel, I conclude that the officers conducted a reasonable stop of Defendant's vehicle that did not violate the Fourth Amendment.

For the foregoing reasons, I **RECOMMEND** that Defendant's Motion to Suppress Statements [Doc. 16] and Motion to Suppress Evidence [Doc. 17] be **DENIED**.[3]

I have now addressed all referred pretrial matters and have not been advised of any impediments to the scheduling of a trial. Accordingly, this CASE is CERTIFIED READY FOR TRIAL.

**IT IS SO REPORTED AND RECOMMENDED** this 27th day of April, 2018.

Catherine M. Salinas
United States Magistrate Judge

---

[3] At the hearing held on March 13, 2018, Mr. Strongwater stated that due to Defendant's request for new counsel, he had not researched or addressed the arguments presented in the Government's surreply brief concerning whether the officers had authority to arrest Defendant outside of the Atlanta city limits. As noted above, I gave Defendant additional time to file a surreply brief addressing that issue [Doc. 85], but he did not file one. If Defendant has additional arguments he seeks to raise, he may do so in the context of his objections to this Report and Recommendation.