IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA

v.

SEDARIOUS LAWRENCE,

      Defendant.

CRIMINAL ACTION NO.

1:17-cr-00126-LMM-CMS

## <u>FINAL REPORT AND RECOMMENDATION</u>

This case is before the Court on the Motion to Suppress the Warrantless Search of Defendant's Vehicle filed on February 19, 2019 by Defendant Sedarious Lawrence. [Doc. 131]. In the motion, Defendant argues that even if the stop of his vehicle was lawful—as both United States District Judge Leigh May and I have previously concluded [Docs. 102, 105]—the search of his vehicle was not. Defendant seeks an evidentiary hearing to present evidence that a K9 officer was on the scene but did not alert on the vehicle. [Doc. 131 at 2, 4]. Defendant apparently believes that such evidence will establish that the officers who stopped him were not telling the truth when they testified that they smelled marijuana upon encountering Defendant.

For the reasons that follow, I recommend that this motion be denied without an evidentiary hearing because: (1) the motion is untimely, having been filed long

after the Court-imposed deadline for filing pre-trial motions; (2) Defendant has waived the issue of whether the stop was constitutional by raising the issue in his motion and then abandoning it; and (3) given the totality of the circumstances, the search was supported by probable cause.

## A.     The motion is untimely, and the issue the motion raises has been abandoned.

The Government argues that Defendant's motion to suppress should be denied because it was untimely filed and because the issue addressed in the motion has been abandoned.  The Federal Rules of Criminal Procedure provide that motions to suppress evidence must be raised by pretrial motion "if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits."  FED. R. CRIM. P. 12(b)(3)(C).  Additionally, the rules allow courts to set (and extend) deadlines for parties to file pretrial criminal motions and state that if a defendant fails to file a motion to suppress within such deadlines, the motion is untimely and will not be considered unless "good cause" is shown.  See FED. R. CRIM. P. 12(c)(1)–(3).  This Court's Local Criminal Rules require that motions be filed within fourteen days after arraignment, unless the Court extends that deadline, and the Local Rules provide that "[t]o avoid waiver, pretrial matters must be raised within the time limits set forth in this rule."  LCr 12.1B, NDGa.

Here, Defendant was arraigned on April 21, 2019, making the original deadline for filing pretrial motions May 5, 2017, pursuant to this Court's Local Rule 12.1B. [Doc. 6]. Thereafter, Defendant requested, and was granted, three extensions of time to file pretrial motions. [Docs. 4, 9, 20, 22, 24]. Ultimately, the final deadline for filing pretrial motions was June 20, 2017. [Doc. 24]. The instant motion was filed on February 19, 2019, nearly twenty months late. Under the rules cited above, the motion is untimely, and the Court should not entertain it unless there has been a showing of good cause for the delay. See FED. R. CRIM. P. 12(e).

A review of the procedural history of this case is necessary to place the filing of this untimely motion in context. Defendant was originally represented by an attorney with the Federal Defender Program who filed multiple motions on Defendant's behalf, including a motion to suppress statements and a motion to suppress evidence that addressed the legality of the stop and search of Defendant's vehicle, as well as certain statements that Defendant made during the traffic stop. [Docs. 16, 17 (the "Suppression Motions")]. I held an evidentiary hearing on the Suppression Motions on July 17, 2017. [Docs. 38, 42]. During the hearing, Defendant indicated that he wished to conduct additional discovery, which I permitted, and I left the evidence open. Thereafter, I continued the evidentiary hearing to August 7, 2017, at which time the parties presented additional evidence.

3

[Docs. 48, 49, 54].   After the evidence closed, Defendant filed a request for new counsel.  [Doc. 56].  I granted the request, and on September 20, 2017, I appointed replacement counsel.  [Doc. 58].  At Defendant's request, I then extended the time for Defendant to file a post-hearing brief three times.   [Docs. 58, 62, 66, 71]. Defendant then filed a post-hearing brief, the Government filed a response, and Defendant filed a reply.  [Docs. 69, 72, 74].

In early April 2018, Defendant again requested new counsel and stated that he wished to represent himself.  I conducted hearings on these requests and denied them.  [Docs. 91, 92, 98, 99, 100, 101, 107].

On April 27, 2018, I issued a Final Report and Recommendation ("R&R") recommending that the Suppression Motions be denied and certifying the case ready for trial.  [Doc. 102].  Defendant did not file any objections to my R&R, and on May 16, 2018, Judge May adopted the R&R, denied the Suppression Motions, and set the case for trial.  [Doc. 105, Docket Entry dated May 17, 2018].

Thereafter, Defendant again requested a change in counsel.   [Doc. 109]. Judge May held a hearing, after which she granted Defendant's request and appointed new counsel to represent Defendant.  [Docs. 110, 111].  The minute sheet for the hearing states, "The Court will allow new counsel to review the [R&R].   New counsel should inform the Court if he/she would like to file

objections to the [R&R].  The Court informed Defendant that this would be the last attorney the Court would appoint him."  [Doc. 110].  Judge May then issued an order giving Defendant's counsel until August 6, 2018 "to review the record and inform the Court if she will be filing any objections" to the R&R.  [Doc. 112].  Thereafter, Judge May gave Defendant four extensions of time to file objections to the R&R, totaling nearly ***seven months*** in additional time.  [Docs. 114, 123, Docket Entries dated September 5, 2018 and October 30, 2018].  Ultimately, the deadline for Defendant's new counsel to file objections to the R&R was extended to March 1, 2019.  [Doc. 123].

Meanwhile, on January 30, 2019, Defendant filed a Motion for Issuance and Service of Subpoena to Produce Documents, in which he sought certain video evidence as well as information about the vehicles that the officers were driving on the date he was arrested.  [Doc. 124].  Although Defendant had not obtained approval from the Court to file this motion, and the deadline for filing pretrial motions had already expired, Judge May decertified the case "for consideration of Defendant's Motion for Issuance and Service of Subpoena to Produce Documents."  [Doc. 125].  In her decertification order, Judge May did not give Defendant permission to file additional motions.  [Id.].  After I ordered Defendant to narrow the request to items that were not the subject of previous subpoena

5

requests and/or that had not been provided by the Government, Defendant withdrew his Motion for Issuance and Service of Subpoena to Produce Documents on February 19, 2019.  [Docs. 128, 130].

The March 1, 2019 deadline for filing objections to the R&R has now passed, and Defendant has filed none.  Instead, Defendant has elected—without court permission—to file a new motion to suppress evidence and request for an evidentiary hearing.  [Doc. 131].  Perhaps in an effort to show good cause for his delay, Defendant states that the reason for filing the instant motion to suppress is that "previous counsel failed to argue, and this Honorable Court failed to address, whether even assuming the traffic stop was lawful, the officers were justified in *searching Defendant's vehicle*."   [Doc. 131 at 2 (emphasis in original)]. Defendant's statement is factually incorrect.

Defendant's previous counsel did, in fact, raise the issue of the legality of the search, separate and apart from the stop.  In Defendant's motion to suppress evidence filed on May 17, 2017, Defendant sought to suppress "all fruits obtained from an illegal search and seizure, . . . as well as all statements allegedly made by Defendant subsequent to the unlawful search and seizure."  [Doc. 17 at 2].  In his brief filed after the evidentiary hearing, however, Defendant did not address the validity of the search, choosing instead to focus on the legality of the stop.  [Doc.

6

69 at 1]. The Government noted this fact in its own post-hearing brief, arguing that Defendant had "abandoned any argument that, if the traffic stop was valid, the officers did not have probable cause to search his vehicle" and went on to specifically address the legality of the search in its submission. [Doc. 72 at 16]. The Government advocated for the applicability of the automobile exception to the Fourth Amendment's warrant requirement and argued that, under the totality of the circumstances, there was a fair probability that contraband or evidence of a crime would be found in Defendant's vehicle. [Id. at 16–18]. Defendant then filed a reply brief without refuting the Government's position that the issue of the search had been abandoned and without addressing the Government's arguments concerning the officers' probable cause to search the vehicle. [Doc. 74]. While it is true that my R&R did not address the legality of the search separate and apart from the legality of the stop, it was not due to any oversight, but rather because Defendant obviously had abandoned that issue.

Defendant has not made any argument to support a finding of good cause for filing an untimely motion. To the extent Defendant might argue that the appearance of new counsel constitutes good cause, that argument is meritless. See United States v. Brandon, 636 F. App'x 542, 547 (11th Cir. 2016) (explaining that "[f]ailure or inadvertence of counsel to timely file a motion to suppress does not

7

constitute good cause"); United States v. Onyekaba, No. 1:10-cr-00202-RWS-RGV, 2011 WL 7473475, at *4 (N.D. Ga. Oct. 21, 2011) (denying a defendant's request, via his fourth attorney, to file additional motions and to revisit motions that had previously been resolved, noting that "the appearance of new counsel does not require the district court to grant relief from the waiver imposed by Rule 12(e)"); United States v. Mwangi, No. 1:09-cr-107-TWT, 2010 WL 690136, at *1, *3 (N.D. Ga. Feb. 18, 2010).

Moreover, it is evident from the filings that Defendant's previous counsel considered challenging the legality of the stop but ultimately elected not to do so. In his reply brief filed after the evidentiary hearing, Defendant did not challenge either (1) the Government's contention that Defendant had abandoned any challenge to the search or (2) the Government's argument that based on the evidence presented at the hearing, the search was constitutionally valid. Thus, Defendant has abandoned his right to challenge the legality of the search. See New York v. Hill, 528 U.S. 110, 114–15 (2000) (holding that a defendant is bound by the acts and decisions of his counsel, except for those relating to certain fundamental rights); Hill v. Jones, 81 F.3d 1015, 1021, n.3 (11th Cir. 1996) (holding that subsequent counsel was bound by the decisions of prior counsel on what arguments to make to the court). In this case, it would be unreasonable to

allow Defendant to revive such a challenge at this late date.  See Plaintiff B v. Francis, No. 5:08cv79-RS/AK, 2009 WL 455392, at *1 (N.D. Fla. Feb. 23, 2009) (stating that "[t]o hold otherwise would wreak havoc on the judicial system and provide an incentive for a dilatory and obstructive party to change counsel simply to avoid the agreements and obligations made by prior counsel and to cause a purposeful and unending delay.").

**B.     The search was supported by probable cause.**

The Government next argues that, even setting aside the procedural issues discussed above, the motion should still be denied on the merits.  To address this argument, I will review the evidence relevant to this issue that was presented at the evidentiary hearing.

Andrew Griffin, a detective with the Atlanta Police Department ("APD"), testified that on the evening of February 16, 2017, he was working a side job at Phillips Arena.  [Doc. 54 at 31–32].  While working that job, he received a tip from a confidential source on his government phone that he should be on the lookout for Defendant who was reported to be in possession of several firearms and driving a black Range Rover.  According to the source, Defendant was thought to be in the area of Campbellton Road or Fulton Industrial Road near the Airway Motel.  [Id. at 32, 37].  Upon receiving this tip, Detective Griffin called APD Officer Caleb

Munson, whom Detective Griffin knew was working in that area, and relayed the tip to Officer Munson for what Detective Griffin described as "officer safety reasons." [Id. at 32–33].

Officer Munson testified that on the evening of February 16, 2017, he was working in a marked patrol car with another APD officer, Jacob Fletcher, in the Fulton Industrial area of Atlanta. [Doc. 42 at 6–10]. Officer Munson testified that he had received a "BOLO"—be on the lookout—message for a black Range Rover, which he located around 9 p.m. at the Airway Motel, an establishment known for drug-related activity and prostitution. [Id. at 8]. Upon noticing the Range Rover parked at the Airway Motel, Officer Munson crossed the street and parked. [Id. at 9]. He then observed the Range Rover leave the motel parking lot and pull onto Fulton Industrial Boulevard at a high rate of speed and without any lights on. [Id. at 10–11]. Officer Munson followed the Range Rover, and when he caught up to it, the Range Rover's lights came on, at which point Officer Munson activated his lights and sirens. [Id. at 11]. The Range Rover did not immediately pull over, and Officer Munson then shined the spotlight that was mounted on his patrol car into the back of the Range Rover. [Id. at 12, 31–32]. While the spotlight was activated, Officer Munson saw "a large object" being thrown to the back of the vehicle. [Id. at 11–12]. At that point, the Range Rover stopped. [Id. at 12].

10

Officer Munson testified that he exited his patrol vehicle and then approached the driver's side of the Range Rover, while Officer Fletcher went to the passenger side. [Doc. 42 at 12]. Defendant was the driver, and he rolled down his window and provided Officer Munson with his driver's license. [Id. at 12–13]. Officer Munson testified that he smelled marijuana coming from the Range Rover. [Id. at 12]. Offer Munson asked Defendant to get out of the car, which Defendant did, and then Officer Munson detained Defendant and placed him in handcuffs "because of the odor of marijuana in the vehicle to conduct a search on the vehicle." [Id. at 12–13]. Once Defendant was in handcuffs, Officer Munson passed him off to Officer Fletcher and conducted a search of the Range Rover. [Id. at 13]. Officer Munson testified that he saw, in plain view, a short-barreled rifle in the back floorboard, located "halfway sticking out from a half-torn shoe box and black bag." [Id. at 15]. The gun was loaded, with a round in the chamber. [Id.]. During the traffic stop, another officer ran a check on Defendant and determined that Defendant was a felon; the officers then arrested Defendant for being a felon in possession of a firearm. [Id. at 19]. Officer Munson was shown a photograph of the gun, which he positively identified. [Doc. 41-1 at 1 (Gov't Ex. 1)].

APD Officer Jacob Fletcher testified that on the evening in question, he was riding with Officer Munson when he became aware of the black Range Rover

11

parked at the Airway Motel.  [Doc. 42 at 38–40].  He testified that when the Range

Rover pulled out of the parking lot, it did so at a "high rate of speed" and did not

have its headlights on, even though it was dark outside.  [Id. at 40–41, 53].  It took

the officers "a minute" to catch up with the Range Rover, but once they did, they

turned on the blue lights and could see "furtive movements" from the driver.  [Id.

at 41].  The officers then called for backup, which Officer Fletcher said was not

unusual, given that his unit (the Apex unit) works in a team setting and that the

Fulton Industrial area is a "very violent and high crime area."  [Id. at 41–42].  After

the officers turned on the blue lights, the Range Rover did not immediately stop:

"It took him not a long time to pull over, but he didn't pull directly over once the

blue lights were initiated, but he didn't take off either.  It was just like a slow pace

like he's pulling over, but it did take him a minute to come to a complete stop."

[Id. at 42].  Officer Fletcher testified that eventually, the Range Rover pulled over

and came to a stop.  [Id. at 42–43].  Officer Fletcher first encountered Defendant as

Officer Munson was bringing him to the rear of the Range Rover.  [Id. at 43, 59].

At that point, Officer Fletcher took Defendant to the rear passenger side of the

patrol car and started talking to Defendant.  [Id.].  Officer Fletcher testified that he

smelled marijuana while he was talking to Defendant.[1]  [Id.].

---

[1]  Defendant testified at the evidentiary hearing, but he did not discuss

Under the automobile exception to the Fourth Amendment's search warrant requirement, law enforcement may search a car if the car "is readily mobile and probable cause exists to believe it contains contraband[.]"  Maryland v. Dyson, 527 U.S. 465, 467 (1999) (citation and internal quotations omitted); see also United States v. Watts, 329 F.3d 1282, 1286 (11th Cir. 2003).  "Probable cause for a vehicle search 'exists when under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in the vehicle.'"  United States v. Johnson, 445 F. App'x 311, 313 (11th Cir. 2011).

At the evidentiary hearing, both officers testified that Defendant was driving the vehicle moments before the search occurred.  Thus, there can be no plausible dispute that the vehicle was readily mobile.  I now turn to whether there was sufficient evidence to establish a fair probability that contraband or evidence of a crime would be found in the vehicle.

The issue about which Defendant complains in the pending motion to suppress concerns the officers' testimony that they both smelled marijuana—

---

whether a K9 officer was present or whether there was any marijuana smell.  His testimony was focused on the stop and whether his lights were on when he was driving down Fulton Industrial Boulevard.  [Doc. 54 at 15–29].  The defense also called Diana DePina, an investigator with the Federal Defender Program, who testified that the distance from the motel to the place where Defendant was stopped was approximately three miles.  [Doc. 42 at 71–74].

Officer Munson testified that the odor came from Defendant's vehicle, and Officer Fletcher testified that he smelled marijuana while he was talking to Defendant.[2] [Doc. 42 at 12–13, 43–44, 59].   The problem with Defendant's argument (in addition to the procedural issues discussed above) is that even if what Defendant suggests is true, *i.e.*, that there was a K9 officer on the scene that did not alert to the vehicle, that fact alone does not negate the credible testimony of the officers. And even if it did, the totality of the circumstances would still support a finding of probable cause to search the vehicle, because there were more factors than just the odor of marijuana that indicated criminal activity was afoot.

For example, the officers observed Defendant's vehicle at night in a known high crime area, in the parking lot of the Airway Motel which Defendant himself described as a "drug hotel."   [Doc. 42 at 8, 41–42; Doc. 54 at 22].   While not enough, standing alone, to establish reasonable suspicion or probable cause, the Supreme Court has held that the fact that a stop occurred in a high crime area is a relevant consideration in a Fourth Amendment reasonableness analysis.   See Illinois v. Wardlow, 528 U.S. 119, 125 (2000).

---

[2]   The Eleventh Circuit has previously recognized that the smell of marijuana gives rise to probable cause supporting a search.  See United States v. Lueck, 678 F.2d 895, 903 (11th Cir. 1982); United States v. Johnson, 445 F. App'x 311, 313 (11th Cir. 2011).

Both officers testified that Defendant left the Airway Motel parking lot at a high rate of speed with his headlights off.  [Doc. 42 at 10–11, 40–41].  Officer Munson testified that based on his experience in law enforcement, he knows that driving without headlights at night can be a sign of trouble or of a crime occurring. [Id. at 10].  Additionally, there was unrefuted evidence presented at the hearing that Defendant did not immediately pull over after the officers signaled for him to do so; rather, the officers testified that Defendant continued slowly driving during which time they observed him making furtive movements and/or moving a large object from the front seat into the back seat.  [Id. at 11–12, 41, 43].  Finally, Officer Munson testified that Defendant appeared nervous while Officer Munson was speaking with him.  [Id. at 13].

I conclude that the totality of the circumstances known to the officers at the time of the search established probable cause to believe that Defendant's vehicle contained contraband or evidence of a crime.  Even if Defendant were to establish that a K9 officer was on the scene and did not alert on the vehicle, the result would be the same.  See United States v. Ruhl, No. 16-331 WMW/FLN, 2017 WL 9274812, at *4 (D. Minn. Apr. 26, 2017) (rejecting argument that a K9 unit's failure to alert on defendant's vehicle negated probable cause where other factors established probable cause to believe that evidence of a crime might be found in

15

defendant's vehicle).  While Defendant may certainly seek to cast doubt on the officers' testimony and challenge their credibility at trial with evidence concerning a K9 officer's failure to alert on the vehicle, that evidence alone would not invalidate the search or require pretrial suppression of any evidence.

**C.     Conclusion**

For the foregoing reasons, I **RECOMMEND** that Defendant's untimely Motion to Suppress the Warrantless Search of Defendant's Vehicle [Doc. 131] be **DENIED**.  I have now addressed all referred pretrial matters and have not been advised of any impediments to the scheduling of a trial.  Accordingly, this case is **CERTIFIED READY FOR TRIAL**.

**SO REPORTED AND RECOMMENDED** this 14th day of March, 2019.

Catherine M. Salinas
United States Magistrate Judge

16